**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No: 18-cv-03305-CMA-KMT

VDARE FOUNDATION,

Plaintiff,

v.

CITY OF COLORADO SPRINGS;
JOHN SUTHERS,

Defendants.

## MOTION TO DISMISS

Defendants, the City of Colorado Springs ("City") and John Suthers ("Mayor Suthers"), by and through the Office of the City Attorney of Colorado Springs, hereby move this Court to dismiss the complaint.

**CMA Civ. Practice Standard 7.1D(a)**: Undersigned counsel certifies that on February 25, 2019, the motion and amendment were discussed with Plaintiff's counsel. Defendants' position is that Plaintiff's complaint fails to state a claim.

**I. INTRODUCTION**

Plaintiff's claims arise from a decision by the Cheyenne Mountain Resort ("Resort") to cancel a scheduled conference in the wake of Plaintiff's connection to the deadly and emotionally charged conflict between two protest groups in Charlottesville,

Virginia. Plaintiff and the Resort are private parties and the scheduled event was to take place on the Resort's private property. The City's involvement in the conference was no different than the role it plays in any other private event on private property—which is to say that it had no role. The City does not customarily provide services or resources to private events. Further, neither Plaintiff nor the Resort requested City services. The Mayor's statement accurately reflected the City's expected involvement in the conference.

The complaint, though, insolates one sentence from a two paragraph public statement issued by an elected official and contorts it to say that the City would not, under any circumstance, provide police and fire services. The Mayor's statement simply does not read the way Plaintiff wishes it did and it does not provide a factual basis for legally cognizable claims. For these reasons, the complaint against the City and the Mayor should be dismissed.

## II. THE ALLEGATIONS IN THE COMPLAINT

The complaint alleges that Plaintiff is a § 501(c)(3) non-profit entity whose "oppos[ition to] current U.S. immigration policy and argu[ments] for immigration control and reform" (Doc. # 1, p. 2-3) causes "controversy" and "media attention." (Doc. # 1, p. 4). Plaintiff alleges that the Resort entered into a contract in March 2017 to host Plaintiff's conference. (Doc. # 1, p. 4, ¶ 11). On August 15, 2017, the conference was cancelled by the Resort. (Doc. # 1, p. 5, ¶ 14).

Days before the Resort cancelled the conference, a vehicle drove through a crowd injuring 28 people and killing one during a conflict between protest groups in

Charlottesville, Virginia. A contributing writer on Plaintiff's website "organized the Friday-Saturday gathering of neo-Nazis, KKK members and other white nationalist groups."[1] (Doc. # 1, p. 5, fn. 2) (https://www.thedenverchannel.com/news/politics/colorado-springs-mayor-wont-commit-city-assistance-to-upcoming-white-nationalist-conference (last visited February 27, 2019)).

After the Charlottesville incident, like many places across the country, members of the Colorado Springs community voiced their opinions on the ideology and actions that led to the conflict. Some expressed opinions about Plaintiff's association with the conflict and its planned conference at the Resort. The Mayor joined the community discussion when he issued a two-paragraph statement. (Doc. # 1, p. 4, ¶ 12). In the statement, the Mayor emphasized that the City "does not have the authority to restrict freedom of speech nor to direct private businesses like the [Resort] as to which events they may host." (Doc. # 1, p. 4, ¶ 12). The Mayor reiterated the City's steadfast "commitment to the enforcement of Colorado law, which protects all individuals . . . to be secure and protected from fear, intimidation, harassment and physical harm." (Doc. # 1, p. 4, ¶ 12). The Mayor also noted the City's lack of involvement in private events such as the planned conference by stating that it "will not provide any support or resources to this event, and does not condone hate speech in any fashion." (Doc. # 1, p. 4, ¶ 12).

---

[1] The news article may be considered by the Court. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (When reviewing a Rule 12(b)(6) motion to dismiss, the Court may consider the complaint and "(1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice[.]").

Plaintiff asserts two claims based upon the Mayor's statement. Plaintiff claims the City and Mayor violated 42 U.S.C. § 1983[2] by infringing upon Plaintiff's "rights to freedom of speech and freedom of association as guaranteed by the First Amendment . . . , [and] equal protection of the laws as guaranteed by the Fourteenth Amendment." (Doc. # 1, p. 6-7). Plaintiff also asserts a claim for First Amendment retaliation. (Doc. # 1, p. 9-10).

## III. ARGUMENT

### A. Standard of review—Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its fact." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under the plausibility standard, allegations which are "merely consistent with a defendant's liability" are insufficient. *Id.* Also insufficient are allegations based on "labels or conclusions 'and a formulaic recitation of the elements.'" *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1240 (D. Colo. 2018) (Arguello, J.) (quoting in part *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The question [for the Court] is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009).

---

[2] The complaint improperly reads "Count One: Violation of 42 U.S.C. § 1983." Complaint, p. 6. *See Garcia v. Wilson*, 731 F.2d 640, 650 (10th Cir. 1984) ("Although section 1983 creates a cause of action for violations of constitutional rights, it is solely a procedural statute which does not itself grant any substantive rights. One cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." (internal citation omitted)).

### B. The complaint does not allege state action

Plaintiff's causes of action stem from the Resort's independent decision to cancel the contract to host Plaintiff's conference. The factual allegations do not reflect that the Resort was acting under the color of state law when it terminated the contract.

Private conduct which is not taken under the color of the state law is not actionable. *See American Manufacturers Mutual Insurance Co. v. Sullivan,* 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful'" (internal quotations omitted)). "In order to state a 42 U.S.C. § 1983 claim, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *B. Willis, C.P.A., Inc. v. BNSF Ry. Corp.,* 531 F.3d 1282, 1305 n. 27 (10th Cir. 2008). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins,* 487 U.S. 42, 49 (1988) (internal quotation marks and citation omitted). "The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982) (emphasis in original). "[P]laintiff has the burden to establish a real connection between a defendant's actionable conduct and her badge of state authority." *O'Connor v. Williams*, 640 F. App'x 747, 751 (10th Cir. 2016) (unpublished). Further, "it is well established that a state

official's mere approval of or acquiescence to the conduct of a private party is insufficient to establish the nexus required for state action." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1450 (10th Cir. 1995). "If a defendant's conduct does not qualify as state action, then the inquiry into § 1983 liability ends." *Robinette v. Fender*, No. 10-CV-02172-CMA-KLM, 2015 WL 10683060, at *2 (D. Colo. Feb. 19, 2015), *aff'd*, 624 F. App'x 664 (10th Cir. 2015).

Assuming, *arguendo*, a constitutional tort occurred, private conduct can only be attributed to the state when:

> [(1)] there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself[; (2) when] the state has so far insinuated itself into a position of interdependence with the private party that there is a symbiotic relationship between them[; (3) when] a private party is a willful participant in joint activity with the State or its agents . . . . [; and (4) when] a private entity that exercises powers traditionally exclusively reserved to the State . . . .

*Gallagher*, 49 F.3d at 1447 (internal citations and quotation marks omitted). Application of each test to the complaint yields the same result—no state action.

First, it was the Resort who terminated the contract and purportedly disrupted "the [c]onference's sponsors and participants of their rights to peaceably assemble and debate issues of importance . . . ." (Doc. # 1, p. 6, ¶ 17). Plaintiff does not allege facts which satisfy any of the *Gallagher* tests. It does not allege that the Resort was a state actor or that the City and Resort acted in concert. For these reasons, the complaint fails to allege that state action caused Plaintiff's alleged injury.

Second, the allegations against Defendants are based upon a single public statement on a matter of public concern. The complaint does not allege Defendants

disrupted the contractual relationship between Plaintiff and the Resort through any official authority beyond the statement. As for the statement itself, it was neither issued as part of the Mayor's official duties nor made possible by virtue of authority the Mayor possessed under the law. Indeed, in making the statement, the Mayor exercised his own First Amendment rights by participating in the community conversation over Plaintiff's future appearance in Colorado Springs. The statement neither insisted that the Resort cancel the contract nor coerced it into doing so. It, instead, specifically emphasized the City's inability to control the business dealings of private parties. Consequently, no nexus between the Mayor's comments and the Resort's actions exists and Plaintiff's suit must be dismissed for lack of state action.

### C. Plaintiff's speech was not abridged or restricted

"[T]he First Amendment does not say that Congress and other government entities must abridge their own ability to speak freely." *Matal v. Tam*, — U.S. —, 137 S. Ct. 1744, 1757 (2017). Rather, "[a]s a threshold requirement for the application of the First Amendment, the government action must abridge or restrict protected speech." *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1232 (10th Cir. 1999). "The crucial question is whether, in speaking, the government is *compelling* others to espouse or to suppress certain ideas and beliefs." *Phelan v. Laramie Cty. Cmty. Coll. Bd. of Trustees*, 235 F.3d 1243, 1247 (10th Cir. 2000) (emphasis in original). "In order to compel the exercise or suppression of speech, the governmental measure must punish, or threaten to punish, protected speech by governmental action that is regulatory, proscriptive, or compulsory in nature." *Id.* "A discouragement that is minimal and wholly subjective does

7

not, however, impermissibly deter the exercise of free speech rights." *Id.* at 1247–48 (internal quotation marks omitted).

The Mayor's statement did not impose or threaten to impose a penalty on Plaintiff that infringed upon its free speech rights. The statement did not carry with it the force of law. It did not prohibit or restrict Plaintiff's ability to speak freely and to speak to whomever it chose. The Mayor's statement did not state that the City would refuse to provide city services if requested or needed, and the complaint does not allege that such services were requested or needed. The Mayor's statement merely reconfirms that the City was not a participant in the future private event at the Resort. Consequently, Plaintiff's First Amendment rights were not infringed.

### D. Plaintiff has not stated a plausible claim for retaliation

Plaintiff's First Amendment retaliation claim is defective. Most notably, it does not plausibly allege that a person of ordinary firmness would be chilled from continuing to exercise his or her free speech rights due to the Mayor's single public statement. The claim also does not plausibly allege that the statement was substantially motivated by Plaintiff's exercise of its First Amendment rights.

"First Amendment retaliation claims are generally, but not always, brought in the public employment context." *McCook v. Spriner Sch. Dist.*, 44 F. App'x 896, 903 (10th Cir. 2002) (unpublished). "Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir. 2000).

"Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000). To state a claim for retaliation, Plaintiff must plausibly allege "(1) [it] was engaged in constitutionally protected activity, (2) the defendant's actions caused [it] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that protected activity, and (3) the defendant's actions were substantially motivated as a response to [its] protected conduct." *McBeth v. Himes*, 598 F.3d 708, 717 (10th Cir. 2010) (internal quotation marks omitted). Assuming, *arguendo*, Plaintiff was engaged in constitutionally protected activity, the complaint fails to plausibly allege the second and third elements of a retaliation claim.

"[T]he First Amendment gives wide berth for vigorous debate, and especially for statements by public officials." *Novoselsky v. Brown*, 822 F.3d 342, 356 (7th Cir. 2016); *see also Eaton v. Meneley*, 379 F.3d 949, 956 (10th Cir. 2004) ("[T]he nature of political debate is rough and tumble. Plaintiffs in public debates are expected to cure most misperceptions about themselves through their own speech and debate."). "[T]he objective standard of a person of ordinary firmness is a vigorous standard; although the standard permits a plaintiff who perseveres despite serious injury from official misconduct to assert a constitutional claim, it is substantial enough that not all insults in public debate become actionable under the Constitution." *Id.*

Plaintiff has not suffered an injury that would chill a person of ordinary firmness from engaging in free speech. Plaintiff alleges the statement "amounts to a refusal to provide city services, including police protection . . . ." (Doc. # 1, p. 4, ¶ 13). Plaintiff's conclusory interpretation of the Mayor's statement reads more into the statement than what is actually present. First, the statement did not say that police and fire services would not be provided if needed. It only said that the City was not providing public services to a private event. Second, the complaint does not allege that any city services were ever requested, or needed and refused.

Additionally, the factual allegations do not indicate that Plaintiff's inability to secure another host was due to the City's refusal to provide police and fire services, or its interference with Plaintiff's free speech rights. Instead, Plaintiff admits it did not even "attempt to arrange another conference." (Doc. #1, p. 10, ¶ 34). Plaintiff's subjective beliefs regarding Defendants' "expressed disapproval" and "expressed intention to take action against [its] speech" are irrelevant to the ordinary firmness inquiry. *Eaton*, 379 F.3d at 954 (noting that the person of ordinary firmness is an objective inquiry). In sum, the Mayor's single statement would not "chill a person of ordinary firmness from continuing to engage in that protected activity." *Worrell*, 219 F.3d at 1212.

The complaint also fails to plausibly allege that the Defendants' conduct was substantially motivated by Plaintiff's exercise of protected conduct. "The third element requires that the plaintiff show that defendants' retaliatory motive was a 'but for' cause of the defendants' actions." *Allen v. Corr. Corp. of Am.*, No. 10-CV-01992-CMA-MJW, 2012 WL 1957298, at *6 (D. Colo. May 8, 2012), *report and recommendation*

*adopted*, No. 10-CV-01992-CMA-MJW, 2012 WL 1963581 (D. Colo. May 31, 2012), *aff'd*, 524 F. App'x 460 (10th Cir. 2013).

Here, the complaint relies solely on temporal proximity to infer intent. Temporal proximity between Plaintiff's speech and adverse action is "insufficient, without more, to establish retaliatory motive." *Butler v. City of Prairie Village*, 172 F.3d 736, 746 (10th Cir. 1999). The Mayor commented on a public issue while pointing out that the City had no control over the private dealings between Plaintiff and the Resort. The Mayor reiterated the City's commitment to equal enforcement of the laws. Taken as a whole, the Mayor's statement was not motivated by Plaintiff's exercise of free speech

Finally, "a trivial or de minimis injury will not support a retaliatory prosecution claim." *Eaton*, 379 F.3d at 955. The complaint alleges that "[a]s a result of Defendants' expressed disapproval of Plaintiff's speech and their expressed intention to take action against [its] speech, [Plaintiff] ha[s] not attempted to arrange another conference to engage in such activity in Colorado Springs." (Doc. #1, p. 10, ¶ 34). Since Plaintiff has not attempted to arrange another conference, it has suffered *de minimis* injuries.

**E. The barebones equal protection claim must be dismissed**

The complaint's cursory mention of equal protection is insufficient to survive a motion to dismiss. "[T]o assert a viable equal protection claim, [plaintiff] must first make a threshold showing that [it] w[as] treated differently from others who were similarly situated to [it]." *Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir. 1998). "A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent." *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988).

The complaint states in passing that Defendants deprived Plaintiff of its rights under the Equal Protection Clause. (Doc. # 1, p. 7, ¶ 19). It does not provide any factual enhancement of the claim and, accordingly, must be dismissed. *See Iqbal*, 556 U.S. at 678 (A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement.").

### F. The barebones association claim should also be dismissed

Like the equal protection claim, Plaintiff's passing reference to a freedom of association claim is insufficient. "[A] right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. When the State interferes with individuals' selection of those with whom they wish to join in a common endeavor, freedom of association may be implicated." *McCook*, 44 F. App'x at 910 (quoting *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 678 (2000)).

Here, the complaint alleges loss of a contract with the Resort and the inability to secure another venue for its conference. The right of association is not so expansive as to encompass a general right to business relationships. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 620 (1984). The complaint lacks any factual allegations to support a contention that Plaintiff's right to associate was infringed.

### G. The Mayor is shielded by qualified immunity

The Mayor is entitled to qualified immunity. "As [the Supreme Court] ha[s] explained many times: Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *City of Escondido, Cal. v. Emmons*, — U.S. —, 139 S. Ct. 500, 503 (2019) (internal quotation marks omitted). "Determining whether the law is clearly established usually requires a Supreme Court or Tenth Circuit decision on point." *Nielander v. Bd. of Cty. Comm'rs of Cty. of Republic, Kan.*, 582 F.3d 1155, 1167 (10th Cir. 2009). While "a case directly on point [is not required] for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. —, 137 S. Ct. 548, 551 (2017). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. —, 136 S. Ct. 305, 308 (2015) (emphasis in original).

Plaintiff cites *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) in support of its contention that the Mayor violated a constitutional right. *Forsyth* is factually dissimilar. The Supreme Court, in *Forsyth*, found a county ordinance imposing a fee on rallies, speeches and public meetings was constitutional infirm. The Court determined that the ordinance provided the administrator with unconstitutionally broad discretion in reviewing a permit and impermissibly imposed fees based upon the content of the applicant's speech. *Id.* at 133-36.

The other case Plaintiff cites in its complaint, *Worrell*, *supra*, is also dissimilar. In *Worrell*, the Tenth Circuit addressed a retaliation suit stemming from a decision to withdraw an offer of employment after the prospective employer discovered that the applicant testified as an expert on behalf of an individual on trial for murder. *Worrell*, 219 F.3d at 1200. The facts in *Worrell* bear no resemblance to the allegations contained in

13

the complaint. Consequently, *Worrell* is insufficient to provide notice of clearly established law.

Finally, the undersigned has found no case from the Supreme Court, Tenth Circuit or the prevailing weight of authorities that puts the question "beyond debate." *Mullenix*, 577 U.S. at —, 136 S. Ct. at 551. Consequently, the Mayor is entitled to qualified immunity.

### H. Claims against the City are deficient and should be dismissed

The complaint sets forth a "formulaic recitation" of a municipal liability claim. The complaint alleges "Defendants acted pursuant to an official municipal policy, custom or practice of the [City] that it would not 'provide any support or resources,' including police and fire services, parking, security and other basic municipal services, for any events or groups it deems to constitute, engage in or include 'hate speech.'" (Doc. # 1, p. 7, ¶ 24). The conclusory statement does not allege a plausible claim for municipal liability.

A municipality may only be liable under § 1983 for its wrongdoing and not simply because it acted as employer. *See Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). To state a claim against a municipality, a complaint must reflect "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Oklahoma Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).

Here, the complaint does not state what *specific* policy or custom was the moving force behind the purported constitutional violation. The complaint improperly seeks to impose liability on the City based upon a *respondeat superior* theory of liability. *See*

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Accordingly, claims against the City must be dismissed.

WHEREFORE, for the foregoing reasons, the City respectfully requests that this Honorable Court enter an order dismissing the City and the Mayor with prejudice, and for any other relief this Court deems appropriate.

Respectfully submitted this 1st day of March, 2019.

                                          OFFICE OF THE CITY ATTORNEY
                                          Wynetta P. Massey, City Attorney


                                          */s/ W. Erik Lamphere*
                                          W. Erik Lamphere, Division Chief - Litigation
                                          30 S. Nevada Ave., Suite 501
                                          Colorado Springs, Colorado 80903
                                          Telephone:  (719) 385-5909
                                          Facsimile:  (719) 385-5535
                                          elamphere@springsgov.com


### CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on the 1st day of March, 2019, I electronically filed the foregoing **MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Randy B. Corporon (rbc@corporonlaw.com)
*Attorney for Plaintiff*


                                          */s/ Donnielle Davis*
                                          Donnielle Davis, Legal Secretary