**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-03305-CMA-KMT

VDARE FOUNDATION,

     Plaintiff,

v.

CITY OF COLORADO SPRINGS, and
JOHN SUTHERS,

     Defendants.

---

**ORDER ADOPTING THE RECOMMENDATION OF UNITED STATES MAGISTRATE
JUDGE KATHLEEN M. TAFOYA**

---

This matter is before the Court on review of the Recommendation by United States Magistrate Judge Kathleen M. Tafoya (Doc. # 35), wherein she recommends that this Court grant Defendants City of Colorado Springs and John Suthers' (collectively, the "Defendants") Motion to Dismiss First Amended Complaint (Doc. # 24). On February 12, 2020, Plaintiff VDARE Foundation ("VDARE") filed an Objection to the Recommendation. (Doc. # 36.) Defendants responded to the Objection on March 4, 2020 (Doc. # 39). For the following reasons, VDARE's objections are overruled and the Court affirms and adopts the Recommendation.

# I.     BACKGROUND

## A.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Magistrate Judge Tafoya provided a thorough recitation of the factual and procedural background in this case. The Recommendation is incorporated herein by reference, *see* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b), and the facts will be repeated only to the extent necessary to address Plaintiff's objections.

VDARE is a non-profit educational organization whose mission is to educate on two main issues: (1) "the unsustainability of current U.S. immigration policy[,]" and (2) "whether the U.S. can survive as a nation-state." (Doc. # 13 at 2, ¶ 2.) On or about March 31, 2017, VDARE reserved the Cheyenne Mountain Resort (the "Cheyenne Resort") for a conference event (the "Conference"). (*Id*. at 4, ¶ 11.) VDARE alleges that Cheyenne Resort was "fully aware of VDARE and its mission, as well as the potential for media attention and possible protests arising from the Conference." (*Id*.)

Nearly five months later, on August 14, 2017, Defendants, through Mayor Suthers, issued the following public statement:

> The City of Colorado Springs does not have the authority to restrict freedom of speech, nor to direct private businesses like the Cheyenne Mountain Resort as to which events they may host.  That said, I would encourage local businesses to be attentive to the types of events they accept and the groups that they invite to our great city.
>
> The City of Colorado Springs will not provide any support or resources to this event, and does not condone hate speech in any fashion.  The City remains steadfast in its commitment to the enforcement of Colorado law, which protects all individuals regardless of race, religion, color, ancestry, national origin, physical or mental disability, or sexual orientation to be secure and protected from fear, intimidation, harassment and physical harm.

(*Id.* at 4, ¶ 12) (the "Statement"). The next day, Cheyenne Resort announced that it would not host the Conference and cancelled its contract with VDARE. (*Id.* at 5, ¶ 14.) Sometime after Cheyenne Resort cancelled the Conference, VDARE alleges that Mayor Suthers "publicly expressed satisfaction that the Conference had been cancelled." (*Id.*)

VDARE alleges that Defendants' Statement that Colorado Springs "will not provide any support or resources to this event" constitutes a "refusal to provide city services, including police protection, for the Conference due to, among other things, its controversial subject matter, VDARE's controversial viewpoints and published content in opposition to current immigration policies, which Defendants termed "hate speech[.]" (*Id.* at 5, ¶ 13.) Further, VDARE asserts that Defendants "either knew or should have known" that the Conference "might give rise to protests or unrest by those who may not agree with VDARE's purpose, viewpoints or statements[,]" and, as such, Defendants' Statement, "given the obvious and foreseeable need for municipal police and fire services, had the effect of depriving VDARE of its First Amendment rights, chilling its speech on matters of public concern, and depriving VDARE and potential attendees of the conference from communicating on important national issues . . . ." (*Id.* at 6, ¶ 17.) As a result, VDARE alleges that Defendants' Statement in conjunction with Cheyenne Resort's cancellation of the Conference give rise to constitutional and common law tort claims. *See* (*id.* at 6–18).

On March 22, 2019, VDARE filed its Amended Complaint in which it asserts three claims for relief against Defendants: (1) violation of VDARE's First Amendment freedom of speech and association rights and the Equal Protection Clause under 42

U.S.C. § 1983; (2) First Amendment retaliation; and (3) intentional interference with a contract. (*Id.*)

On April 17, 2019, Defendants filed a Motion to Dismiss the First Amended Complaint (Doc. # 24) arguing that VDARE failed to state a claim as to its First Amendment, Equal Protection Clause ("EPC"), and retaliation claims under Federal Rule of Civil Procedure 12(b)(6), and that the Colorado Governmental Immunity Act ("CGIA") bars VDARE's tort claim. (*Id.* at 5–14.) VDARE responded to Defendants' Motion to Dismiss on May 24, 2019, and contends that it set forth plausible claims. (Doc. # 32 at 1–2.) Specifically, VDARE posits that it adequately pleaded state action by alleging that it was Defendants' Statement itself that caused Cheyenne Resort to cancel the Conference, which formed the basis of its First Amendment and retaliation claims. (*Id.* at 3–6.) Moreover, VDARE suggests that its tort claim against Mayor Suthers survives under the CGIA because it pleaded sufficient factual allegations showing that Mayor Suthers' made the Statement in a "willful and wanton" manner as he "knew" that his conduct "violated Plaintiff's First Amendment rights and placed the rights and safety of conference-goers and the Resort's patrons and employees at serious risk." (*Id.* at 19.) VDARE did not address its EPC claim. On June 6, 2019, Defendants replied and reiterated that VDARE's omission of factual allegations in support of elements necessary to establish First Amendment and retaliation claims and conclusory allegations about Mayor Suthers' willful and wanton conduct require this Court to dismiss Amended Complaint. (Doc. # 33.)

**B. THE MAGISTRATE JUDGE'S RECOMMENDATION**

As discussed in greater detail below, Magistrate Judge Tafoya issued her Recommendation that the Court grant Defendants' Motion to Dismiss on January 29, 2020. (Doc. # 35.) The Magistrate Judge recommended that the Court grant Defendants' Motion to Dismiss as to VDARE's First Amendment claim because, under the Tenth Circuit's nexus test, VDARE failed to allege facts showing that Cheyenne Resort's cancellation of the Conference can be "attributed to the [D]efendants[.]" (*Id.* at 8, 9–11.) Because state action was not adequately pleaded, Magistrate Judge Tafoya determined that VDARE did not sufficiently plead violations of its First Amendment rights. (*Id.* 5–8.) Given that VDARE did not adequately plead a constitutional violation, the Magistrate Judge concluded that Mayor Suthers was entitled to qualified immunity. (*Id.* at 10–11.) Moreover, she determined that VDARE's retaliation claim should be dismissed because VDARE failed to adequately plead the third element of that claim. (*Id.* at 9–10.) She also agreed with Defendants that VDARE's EPC claim should be dismissed for failure to state a claim based on VDARE's failure "to allege any facts to support its contention that it was denied equal protection rights." (*Id.* at 9.) Because the Magistrate Judge recommended dismissal of VDARE's federal claims, she further recommended that this Court decline to exercise jurisdiction over VDARE's tortious interference claim. (*Id.* at 11–12.)

On February 12, 2020, VDARE filed an Objection[1] to the Recommendation as to all three claims, although VDARE did not address the EPC claim. (Doc. # 36.) Because VDARE argues that the Magistrate Judge erred with respect to its First Amendment and retaliation claims, it also asserts that the Court need not decline to consider the state law claim. (*Id.* at 16.) Defendants responded to VDARE's Objection on March 4, 2020. (Doc. # 39.) For the following reasons, the Court adopts the Recommendation.

## II.    <u>STANDARD OF REVIEW</u>

### A.    REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

---

[1] VDARE is undeniably wrong when it asserts that its Objection "is not subject to, or is an exception to, the page limitations set forth in the Court's Practice Standards. (Doc. # 36 at 1.) The Court's Civil Practice Standard 10.1(d)(1) expressly provides: "[e]xcept for motions for summary judgment, **all motions, objections** (including objections to the recommendations or orders of United States Magistrate Judges), and **responses <u>shall not exceed 15 pages</u>**." (Emphasis added). Thus, it baffles this Court as to how VDARE could both violate this Court's Civil Practice Standards and represent a position that is incontrovertibly contradicted by the plain language of the very practice standard to which VDARE cites. And VDARE's explanation in its *Post Factum* Motion to Exceed Page Limitation (Doc. # 41) is unsatisfactory. Nonetheless, given the dispositive nature of the Recommendation, the Court declines to strike VDARE's excess pages. However, VDARE is admonished that any future noncompliance with this Court's Civil Practice Standards may result in summary denials or other sanctions.

When there are no objections filed to a magistrate judge's recommendation, "the district court is accorded considerable discretion with respect to the treatment of unchallenged magistrate reports. In the absence of timely objection, the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

## B.   RULE 12(B)(6)

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible.'"

*Barrett-Taylor v. Birch Care Community, LLC*, Case No. 19-cv-02454-MEH, 2020 WL 1274448, at *2 (D. Colo. Mar. 17, 2020) (quoting *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017). Although the "Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim." *Barrett-Taylor*, 2020 WL 1274448, at *2 (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)).

The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). Indeed, the complaint must provide

"more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted). Additionally, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and citations omitted). This pleading standard ensures "that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an adequate defense" and avoids "ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

### III.  DISCUSSION

### A.  RELEVANT LAW

#### 1.  State Action Doctrine and Section 1983 Claims

The Fourteenth Amendment provides in part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "That language establishes an 'essential dichotomy' between governmental action, which is subject to scrutiny under the Fourteenth Amendment, and private conduct, which 'however discriminatory or wrongful,' is not subject to the Fourteenth Amendment's prohibitions." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442,

1446 (10th Cir. 1995) (quoting *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 349 (1974)) (internal quotation omitted). The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble[.]" U.S. Const. amend. I. The Fourteenth Amendment renders the First Amendment's Free Speech Clause applicable against the States. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). "The text and original meaning of those Amendments, as well [the Supreme] Court's longstanding precedents, establish that the Free Speech Clause prohibits only *governmental* abridgement of speech. The Free Speech Clause does not prohibit *private* abridgement of speech." *Id.* (collecting cases) (emphasis in original).

Pursuant to the text and structure of the Constitution, the Supreme Court's "state-action doctrine distinguishes the government from individuals and private entities." *Id.* (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Assn.*, 531 U.S. 288, 295–96 (2001)). There is a judicial obligation "not only to preserv[e] an area of individual freedom by limiting the reach of federal law and avoi[d] the imposition of responsibility on a State for conduct it could not control," *Brentwood Acad.*, 531 U.S. at 295 (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)) (internal quotations omitted), "but also to assure that constitutional standards are invoked when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains," *id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)) (internal quotation marks omitted) (emphasis in original). "Thus, we say that state action may be found if, though only if, there is such a 'close nexus between the State and the

challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson*, 419 U.S. at 349).

42 U.S.C. § 1983 provides a remedy for constitutional violations committed by state officials. There are two elements to a Section 1983 claim—first, a plaintiff must "show that they have been deprived of a right secured by the Constitution and the laws of the United States[,]" and second, a plaintiff must "show that defendants deprived them of this right acting under color of [] statute of the state." *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002). The Supreme Court has articulated a two-part test to determine whether a private party's action constitutes state action: (1) "the deprivation must be caused by the exercise of some right to privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the state is responsible . . . [(2)] the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state." *Brill v. Correct Care Solutions, LLC*, 286 F. Supp. 3d 1210, 1216 (D. Colo. 2018) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)). Accordingly, conduct that constitutes state action under the First and Fourteenth Amendments necessarily constitutes conduct "under color of law" pursuant to Section 1983—even if a private actor commits the conduct. *Id.* (citing *Lugar*, 457 U.S. at 935).

The Supreme Court has observed that a fundamental threshold issue with constitutional claims predicated upon private conduct is whether such conduct can be considered truly the action of the State. *See Manhattan Cmty. Access Corp.*, 139 S. Ct.

at 1929. Although there are several tests for determining whether state action is present, the parties do not dispute that the "nexus test" applies to instant action. *Brill*, 286 F. Supp. 3d at 1215; (Doc. # 35 at 6; Doc. # 32 at 3; Doc. # 39 at 4). Under the nexus test, a plaintiff must demonstrate that "there is a sufficiently close nexus" between the government and the challenged conduct such that the conduct "may be fairly treated as that of the State itself." *Gallagher*, 49 F.3d at 1448. Under this approach, a state normally can be held responsible for a private decision "only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* (quoting *Blum*, 457 U.S. at 1004). This test ensures that the state will be held liable for constitutional violations only if it is responsible for the specific conduct of which the plaintiff complains." *Id.* Although the "required inquiry is fact-specific[,]" the Supreme Court has articulated general principles guiding whether the requisite nexus exists:

- The existence of governmental regulations, standing alone, does not provide the required nexus. *Blum*, 457 U.S. at 1004 (citing *Jackson,* 419 U.S. at 350);

- The fact that a private entity contracts with the government or receives governmental funds or other kinds of governmental assistance does not automatically transform the conduct of that entity into state action. *Rendell–Baker v. Kohn,* 457 U.S. 830, 840–42, (1982); *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.,* 483 U.S. 522, 544 (1987) ("The Government may subsidize private entities without assuming constitutional responsibility for their actions.");

- Under the nexus test, "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Blum*, 457 U.S. at 1004–05.

*Gallagher*, 49 F.3d at 1448.

## 2. <u>Government Speech</u>

"The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009) (citing *Johanns v. Livestock Marketing Assn.,* 544 U.S. 550, 553 (2005) ("[T]he Government's own speech ... is exempt from First Amendment scrutiny"); *Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.,* 412 U.S. 94, 139, n. 7 (1973) (Stewart, J., concurring) ("Government is not restrained by the First Amendment from controlling its own expression")). "A government entity has the right to 'speak for itself.'" *Id.* (quoting *Bd. of Regents of Univ. of Wis. Sys. v. Southworth,* 529 U.S. 217, 229 (2000)). The Government is "entitled to say what it wishes," *id.* at 467–78 (quoting *Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819, 833 (1995)), "and to select the views that it wants to express[.]" *Id.* (collecting cases). Indeed, "[i]t is the very business of government to favor and disfavor points of view[.]" *Nat'l Endowment for Arts v. Finley,* 524 U.S. 569, 598 (1998) (Scalia, J., concurring).

However, there are restraints on government speech. "For example, government speech must comport with the Establishment Clause. The involvement of public officials in advocacy may be limited by law, regulation, or practice. And of course, a government entity is ultimately 'accountable to the electorate and the political process for its advocacy.'" *Id.* at 468 (quoting *Southworth,* 529 U.S. at 235). "If the citizenry objects, newly elected officials later could espouse some different or contrary position." *Id.* The Government's freedom to speak "in part reflects the fact that it is the democratic electoral process that first and foremost provides a check on government speech."

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2245 (2015). "And the Free Speech Clause itself may constrain the government's speech if, for example, the government seeks to compel private persons to convey the government's speech." *Id.* at 2246.

When the "government speaks it is entitled to promote a program, to espouse a policy, or take a position. In doing so, it represents its citizens and it carries out its duties on their behalf." *Id.* Indeed, the Free Speech Clause "helps produce informed opinions among members of the public, who are then able to influence the choices of a government that, through words and deeds, will reflect its electoral mandate." *Id.* at 2245 (citing *Stromberg v. California*, 283 U.S. 359, 369 (1931)).

## B. ANALYSIS

### 1. <u>First Amendment Claim</u>

VDARE's First Amendment claim requires it to establish that the violative conduct was committed by a state actor. The parties vehemently dispute that the conduct in the instant case was committed by a state actor. Defendants contend that the conduct in question is Cheyenne Resort's cancellation of the Conference. (Doc. # 24 at 5–7; Doc. # 39 at 3–4.) VDARE argues that Defendants' Statement amounted to unconstitutional conduct. (Doc. # 32 at 3–6; Doc. # 36 at 5–12.) Magistrate Judge Tafoya focused on the Cheyenne Resort's cancellation of the Conference and whether such cancellation could be "attributed" to Defendants. (Doc. # 35 at 8.) Determining that VDARE failed to plead sufficient factual allegations showing that the cancellation of the Conference could be attributed to Defendants under the nexus test, the Magistrate Judge recommended that

the Court dismiss Plaintiff's First Amendment claim. (*Id.* at 8.) However, applying *de novo* review, the Court finds that VDARE fails to adequately allege that either Cheyenne Resort's cancellation or Defendants' Statement amounts to unconstitutional state action for purposes of stating a plausible First Amendment claim.

### a. State Action Claim Predicated Upon Cheyenne Resort's Cancellation

To begin, Cheyenne Resort is a private party. If Cheyenne Resort's cancellation is the conduct in question, VDARE must plead factual allegations showing that Cheyenne Resort's cancellation constituted state action. *Brill*, 286 F. Supp. 3d at 1216 (quoting *Lugar*, 457 U.S. at 937). This is so because the Free Speech Clause "does not prohibit *private* abridgement of speech." *Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1928. "In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action." *Nat'l Collegiate Athletic Ass'n*, 488 U.S. at 179. Indeed, the "Court 'ask[s] whether the State provided a mantle of authority that enhanced the power of the harm-causing individual actor.'" *Jackson v. Curry Cty.*, 343 F. Supp. 3d 1103, 1110 (D.N.M. 2018) (quoting *Nat'l Collegiate Athletic Ass'n*, 488 U.S. at 179). Both parties agree that the nexus test applies,[2] and as such, a plaintiff must demonstrate that "there is a sufficiently close

---

[2] The Court notes that VDARE incorrectly states that "[t]he nexus test found in the Magistrate Judge's Recommendation is meant to ensure that there is a 'a real nexus between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant.'" (Doc. # 36 at 6 (quoting *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1156 (10th Cir. 2016)).) *Schaffer* addresses an entirely different nexus analysis that does not concern private entities. 814 F.3d at 1156 (addressing whether public parking officer's provision of witness statements while on duty amounted to statements made under color of the

nexus" between Defendants and the challenged conduct such that the conduct "may be fairly treated as that of the State itself." *Gallagher*, 49 F.3d at 1448 (quoting *Jackson*, 419 U.S. at 351).[3] In particular, under the nexus test, "a state normally can be held responsible for a private decision 'only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Gallagher*, 49 F.3d at 1448 (quoting *Blum*, 457 U.S. at 991).

VDARE's Amended Complaint is devoid of any factual allegations that show Cheyenne Resort's cancellation constituted state action. Although VDARE alleges that Defendants knew or should have known that the Statement would cause Cheyenne Resort to cancel the Conference in abridgement of VDARE's First Amendment rights (Doc. # 13 at 6, ¶ 17; 7, ¶ 22; 8–9, ¶¶ 27–29), such allegations are totally conclusory and do nothing to tether Cheyenne Resort's conduct to state action. Furthermore, VDARE pleads that the timing of the Defendants' Statement and Cheyenne Resort's cancellation of the Conference (Doc. # 32 at 4; Doc. # 13 at 4–5, ¶¶ 11–13; Doc. # 36 at 10–11) is sufficient to show that Defendants' Statement caused Cheyenne Resort to cancel the Conference. However, this allegation too is conclusory and fails to support the conclusion that Cheyenne Resort's cancellation of the Conference amounted to state action, i.e., that Defendants "exercised coercive power" or "provided such

---

law). Magistrate Judge Tafoya applied the nexus test for determining whether a private actor's conduct can amount to state action. (Doc. # 35 at 5–7.) Thus, the Court rejects VDARE's nonsensical construction of the Recommendation based on *Schaffer*.

significant encouragement" that Cheyenne Resort's choice to cancel the Conference "must in law be deemed to be that of" Defendants. *Blum*, 457 U.S. at 1004. In short, Plaintiff fails to state a First Amendment claim based on Cheyenne Resort's conduct.

### b. First Amendment Claim Based on Defendants' Statement

The Court next turns its attention to VDARE's main contention on the First Amendment issue—that the Magistrate Judge failed to evaluate whether VDARE adequately pleaded that Defendants' Statement violated VDARE's First Amendment rights, and, instead, placed too much focus on Cheyenne Resort's reaction to Defendants' Statement. (Doc. # 36 at 2, 5–12.) VDARE asserts that, because Mayor Suthers "expressly" issued the Statement in his official capacity as Mayor of Colorado Springs, Defendants' conduct was made under color of law under the second element of its Section 1983 claim. (Doc. # 36 at 6.) Thus, VDARE avers that this Court should analyze the first element of its Section 1983 claim and assess whether Defendants' Statement deprived VDARE of its First Amendment rights. (*Id.* at 2, 6–7.) Because neither Defendants nor the Magistrate Judge addressed this point, the Court will do so.

In its opposition to Defendants' Motion to Dismiss and its Objection to the Recommendation, VDARE argues that Defendants' Statement constituted an unconstitutional threat to Cheyenne Resort and "a continuing threat to any other private venue that would provide space for Plaintiff to hold a conference or gathering." (Doc. # 32 at 6 (citing Doc. # 13, ¶¶ 29, 39, 49); Doc. # 36 at 10–12.) Furthermore, VDARE argues that Defendants' "announcement that Colorado Springs would not provide police protection or other city services necessary to protect Plaintiff's conference from

disruption and violence made it 'impossible' for [Cheyenne Resort] to comply with its contract with Plaintiff." (Doc. # 36 at 12 (citing Doc. # 13 at ¶ 46).) As such, VDARE posits that, under Supreme Court and Tenth Circuit precedent, Defendants' Statement infringed upon VDARE's First Amendment rights. (*Id.* at 7–11.) The Court disagrees.

Defendants' conduct, as alleged, does not establish a plausible First Amendment claim. As a preliminary matter, the Statement itself is an exercise of permissible government speech. *Summum*, 555 U.S. at 467–68; *Johanns,* 544 U.S. 55 at 553; *Southworth,* 529 U.S. at 229; *Rosenberger*, 515 U.S. at 833; *Finley,* 524 U.S. at 598. Defendants are entitled to speak for themselves, express their own views, including disfavoring certain points of view. *Summum*, 555 U.S. at 467; *Finley*, 524 U.S. at 598. In the Statement, Defendants merely expressed themselves and their views on the need for private local businesses to pay attention to the types of events they accept and groups that they invite to their City. (Doc. # 13 at 4, ¶ 12.) Defendants also suggested that Colorado Springs would not provide any support or resources for VDARE's Conference, which was Colorado Springs' disfavoring of VDARE's point of view. (*Id.*); *see Finley,* 524 U.S. at 598. In the face of this permissible government speech, VDARE fails to cite to any Supreme Court or Tenth Circuit case, and this Court has not found one, providing that, as a matter of law, a city's public communication that it would not provide local support or resources to a private entity's private event on private property constitutes a violation of that private entity's First Amendment speech or association rights. Accordingly, Supreme Court precedent on government speech evinces that

Defendants' Statement is permissible and does not constitute an abridgement of VDARE's First Amendment rights.[4]

VDARE also argues that Defendants' Statement constitutes a First Amendment violation because "[i]t is well settled law that it is a violation for state actors to withhold generally available public services, like police protection, to private citizens based on their political views." (Doc. # 36 at 9; Doc. # 32 at 7–8.) However, the cases which VDARE cites do not support such a broad proposition.

VDARE describes *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) as the "governing U.S. Supreme Court precedent in this case[.]" (Doc. # 32 at 7.) In *Bantam Books*, Rhode Island law granted a commission ("Commission") with the power to refer distributors and publishers for criminal prosecution for the sale or distribution of publications unapproved by the Commission and to notify publishers of such power through extrajudicial procedures, *id.* at 61–63; and the publishers obliged for fear of being prosecuted, *id.* at 64. The Supreme Court held that the Commission's system was a "scheme of state censorship effectuated by extralegal sanctions[,]" *id.* at 72, that amounted to unconstitutional state action in violation publishers' First Amendment rights, including the prior restraint of protectable publications, which bears a "heavy presumption against" such a system's "validity." *Id.* at 70. Especially egregious in *Bantam Books, Inc.* were the notices that the Commission sent to distributors to which the Supreme Court likened to "threat[s] of invoking legal sanctions and other means of

---

[4] Of course, Defendants are accountable for their speech through the electoral system in which VDARE or its supporters in the Colorado Springs community are welcome to participate.

coercion, persuasion, and intimidation[.]" *Id.* at 67, 67 n. 7–8. In the instant case,

Defendants issued a public statement that both acknowledged that Colorado Springs

had no authority to restrict freedom of speech or direct Cheyenne Resort as to which

events they may host and expressed that Colorado Springs would not provide any

support or resources for VDARE's Conference. (Doc. # 13 at 4, ¶ 12.) *Bantam Books,*

*Inc.* is clearly distinguishable from the instant case because Defendants' Statement in

this case resembles nowhere near the same or similar level of coercive threats and

informal censorship at issue in *Bantam Books, Inc.* Therefore, the Court finds that

VDARE's reliance on *Bantam Books, Inc.* is misplaced.

VDARE's dependence on *Forsyth County, Ga. v. Nationalist Movement* fares no

better. 505 U.S. 123 (1992); (Doc. # 36 at 9, 15–16; Doc. # 32 at 15–16.) VDARE

argues that the *Forsyth County* decision stands for the proposition that "[i]f a

municipality cannot impose even a small fee on an event based on a good-faith

estimate of the police protection it will require, a municipality clearly violates the First

Amendment when it decides to withhold police protection *entirely* from an event based

*expressly* on disapproval of the event's message." (Doc. # 32 at 16 (emphasis in

original).) This is a disingenuous stretch. *Forsyth County* involved a facial challenge to

an ordinance that required public officials to review the content of a private party's

speech and anticipate how listeners would react to such speech in order to assess the

value of a permit fee to impose upon the private party seeking to exercise such speech

on public property. In stark contrast, the instant case involves Colorado Springs'

decision to exercise permissible government speech expressing that it would not devote

any support or resources to Cheyenne Resort, a private party hosting a private organization's event on private property. The *Forsyth County* Court time and again stressed the importance of First Amendment interests in the context of governmental prior restraint and regulation of speech in the "archetype of a traditional public forum." 505 U.S. at 130. No such interests, public forums, or permit schemes are presented here. In contrast to the licensing authority in *Forsyth County*, Colorado Springs acknowledged that it had no authority to restrict freedom of speech at private facilities such as those owned by Cheyenne Resort. (Doc. # 13 at 4, ¶ 12.) Accordingly, the Court gleans nothing from *Forsyth County* that supports VDARE's assertion that it pleaded a plausible First Amendment claim.

The Court also swiftly disposes of any value that VDARE ascribes to the Tenth Circuit's decision in *National Commodity & Barter Association v. Archer*, 31 F.3d 1521 (10th Cir. 1994). *National Commodity and Barter* involved federal IRS and United States Department of Justice officers and employees who, pursuant to a search warrant, raided a nonprofit association's offices and some association members' homes and seized "membership lists and other records, books, contributions, stationery, correspondence, brochures, and legal files belonging to the" association. *Id*. at 1525–26. Several of the agents and officers then used the membership lists to act as undercover agents in order to infiltrate the association whose goal was to educate the public on the principle that federal taxes are fundamentally unconstitutional. *Id*. at 1525–27. In determining that the association stated a plausible First Amendment claim based on such searches and use of membership lists, the Tenth Circuit relied on precedent

addressing specific First Amendment challenges to government regulations and enforcement of subpoenas to obtain membership records or lists that would blunt association members' free speech and association rights, including a resulting reluctance of others to associate with such associations for fear of reprisal. *Id.* at 1527–31. Not only is *National Commodity and Barter* not pertinent to the instant case, but also, it in no way supports the proposition that "[i]t is well settled law that it is a violation for state actors to withhold generally available public services, like police protection, to private citizens based on their political views." (Doc. # 36 at 9.)

What is apparent from all three of these cases is that, for unconstitutional state action to exist, state law must direct and/or state agencies and officials must commit conduct that directly violates a party's First Amendment rights. As applied to the instant case, the Court concludes that as a matter of law, Defendants' public statement was permissible government speech which in no way directed Cheyenne Resort to take any action. As such, the Statement did not amount to unconstitutional state action.

VDARE's final objection as to the First Amendment claim is that the Magistrate Judge failed to draw all reasonable inferences from its factual allegations, including the need to assume the "foreseeable and naturally flowing result of the Mayor's state action under the color of the law[.]" (Doc. # 36 at 7.) VDARE argues that, had she done so, she would have concluded that the Amended Complaint sets forth a plausible First Amendment Claim. (*Id.*) However, VDARE's conclusory and speculative allegations in its Amended Complaint leave a void connecting Defendants' Statement to Cheyenne Resort's cancellation of the Conference:

- Given the nature of VDARE's work, and the controversy that it sometimes generates, Defendants either knew or should have known that VDARE's planned Conference might give rise to protests or unrest by those who may not agree with VDARE's purpose, viewpoints or statements." (Doc. # 13 at 6, ¶ 17.)

- Defendants' promise that the City would not provide "any support or resources" to the Conference, given the obvious and foreseeable need for municipal police and fire services, had the effect of depriving VDARE of its First Amendment rights, chilling its speech on matters of public concern, and depriving VDARE and potential attendees of the Conference from communicating on important national issues such as immigration control and reform." (*Id.*)

- Defendants' announcement that they would not provide any municipal resources or support of any kind, including basic police, fire, ambulance, parking and security services, meant that participants in the Conference, the Resort's patrons and employees, and innocent bystanders would potentially be subjected to serious injury or death in the event that they were threatened or attacked by protestors. In addition, the Resort was powerless to stop protestors from destroying its property, harassing or injuring its patrons, or disrupting its business operations. Defendants knew that their conduct violated Plaintiff's First Amendment rights and placed the rights and safety of conference-goers and the Resort's patrons and employees at serious risk. They intentionally, recklessly and heedlessly disregarded this risk. (Doc. # 13 at 7–8, ¶ 22.)

- This statement effectively made performance of the contract impossible. Defendants' announcement meant that the Resort would be placing its patrons and employees at risk of serious injury or even death if it honored the terms of its contract with Plaintiff. The Resort would be powerless to stop protestors from destroying its property, harassing or injuring its patrons, or disrupting its business operations in the event it honored its agreement to host the Conference. It would be placing itself at a substantial risk of tort or potentially even criminal liability if it proceeded to host the Conference while knowing that basic city services would not be provided in the vent that they were needed. (Doc. # 13 at 16, ¶ 46.)

- Defendants' actions have made it impossible for VDARE to conduct future conferences, discussions and events in Colorado Springs, as Defendants have made clear their position that VDARE, its sponsors and other associated individuals enjoy a disfavored status under the law. (Doc. # 13 at 9, ¶ 29.)

These allegations attempt to raise a causal relationship between Defendants' Statement and Cheyenne Resort's cancellation of VDARE's Conference. However, because these allegations are conclusory and speculative, this Court cannot rely upon them in determining whether VDARE has stated a plausible First Amendment claim. *S. Disposal, Inc.*, 161 F.3d at 1262; *Iqbal*, 556 U.S. at 678. For example, VDARE alleges that Defendants' Statement made it impossible for Cheyenne Resort to perform its contract with VDARE. (Doc. # 13 at 16, ¶ 46.) This is a conclusion; and VDARE never sets forth factual allegations as to how the Statement made it impossible. There are no allegations as to why Cheyenne Resort cancelled the Conference—only speculation as to why it did so, based on hypothetical events that might have occurred, as well as protests that might have turned violent. (*Id.*) In the absence of factual allegations underlying these speculations, these conclusions are insufficient to support a plausible claim for relief, and as a result, the Magistrate Judge was correct to ignore them.

Moreover, VDARE asserts the following unsupported legal conclusions in its Amended Complaint:

- "Defendants intended to deprive VDARE of its rights under the First Amendment to freedom of speech, assembly and association . . . By refusing to provide basic safeguards for the Conference's sponsors and participants, Defendants deprived the Conference's sponsors and participants of their rights to peaceably assemble, and debate issues of importance to themselves, to their community, and to the country as a whole." (Doc. # 13 at 6, ¶ 17.)

- Defendants knew that their conduct violated Plaintiff's First Amendment rights and placed the rights and safety of conference-goers and the Resort's patrons and employees at serious risk. (*Id.* at 7, ¶ 22.)

- This case is on all-four with *Bantam Books*. (Doc. # 13 at 13, ¶ 34.)

- Thus, Defendants' statement created exactly the sort of "informal blacklist" of certain types of speech that was prohibited by the Supreme Court over 54 years ago in *Bantam Books*. (Doc. # 13 at 13, ¶ 34.)

For the reasons set forth *supra* at pp. 18–20, these legal conclusions too are unworthy of the presumption of truth for purposes of supporting a plausible First Amendment claim. *Iqbal*, 556 U.S. at 679–81.

Thus, VDARE turns to assumptions about the effects of Defendants' Statement to demonstrate that it has stated a plausible First Amendment Claim. Although VDARE requests the Court to draw a proper inference from its factual allegations, VDARE is actually inviting this Court to assume that Defendants knew or should have known that Cheyenne Resort would cancel the Conference based on Defendants' public statement. VDARE further requests that this Court assume that Defendants knew or should have known that the Statement violated Plaintiff's First Amendment rights. (Doc. # 36 at 7, 11.) Yet, there is a difference between an inference and an assumption. There are no factual allegations upon which this Court can draw reasonable inferences in favor of VDARE without making assumptions or engaging in speculation. Instead, these "naked assertions" are only conclusions and speculations "devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. As such, they are neither entitled to the presumption of truth nor show that Plaintiff has stated a plausible First Amendment claim. *Twombly*, 550 U.S. at 555.In accordance with unequivocal Supreme Court and Tenth Circuit precedent, the Court declines VDARE's invitation. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) (explaining that a court may not assume that a plaintiff can prove facts that have not

been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"). Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's First Amendment claim is dismissed.

Because VDARE's First Amendment claim fails, the Court agrees with the Magistrate Judge that Mayor Suthers is entitled to qualified immunity in his individual capacity as to VDARE's First Amendment claim. (Doc. # 35 at 10–11); *see Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) ("Qualified immunity attaches when the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (explaining that where no constitutional right has been violated "no further inquiry is necessary and the defendant is entitled to qualified immunity").

### 2.    Retaliation Claim

The parties and the Magistrate Judge agree that, in order to plead a plausible retaliation claim, a plaintiff must set forth factual allegations sufficient to establish three elements: (1) the plaintiff was engaged in constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of

constitutionally protected activity. *Leverington v. City of Colo. Springs*, 643 F.3d 719, 729 (10th Cir. 2011); *McBeth v.* Himes, 598 F.3d 708, 717 (10th Cir. 2010); *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). The Magistrate Judge specifically concluded that VDARE failed to adequately plead the third element because VDARE "fails to allege any facts in support of" the conclusory allegation that Defendants' Statement was due to VDARE's controversial viewpoints and VDARE relied solely on temporal proximity to infer intent. (Doc. # 35 at 10 (quoting (Doc. # 13 at 3, ¶ 13).)

VDARE objects to the Magistrate Judge's decision as "plainly wrong" and argues that Defendants' Statement "was explicitly targeted at VDARE, and it was made in the context of the then-planned event of VDARE at [Cheyenne] Resort." (Doc. # 36 at 12–13.) VDARE cites paragraphs twelve through thirteen of its Amended Complaint to support its contention that the "Mayor's stated motivation was to oppose 'hate speech,' which it associated with VDARE, showing that the Mayor was opposed to VDARE's event in Colorado Springs because of VDARE's perceived speech and political positions." (*Id.* at 13.) VDARE also posits that, subsequent to Cheyenne Resort's cancellation of the Conference, Mayor Suthers' statement expressing "satisfaction" that the Conference had been cancelled confirms Defendants' retaliatory motive under the third element. (*Id.* (citing Doc. # 13 at ¶ 14.) Furthermore, VDARE suggests that these facts "are clear evidence of Defendants' motivation to oppose Plaintiff's protected speech" and that "Defendants would not have made a statement opposing VDARE's event and alleging it was "hate speech" if they did not believe that VDARE was

associated with "hate speech, and if they were not opposed to such constitutionally-protected speech." (*Id.*)

The Court ultimately agrees with Magistrate Judge Tafoya's conclusion and finds that VDARE's reliance on speculations and conclusory allegations is futile in pleading a plausible retaliation claim. However, the Court finds that VDARE has failed to allege the second element of its retaliation claim, and as a result, it need not address the first or third elements of the claim. Indeed, this Court has already determined that Defendants' Statement amounted to constitutionally permissible government speech and did not support any violation of VDARE's First Amendment rights. *See, e.g.*, *Summum*, 555 U.S. at 467; *Johanns*, 544 U.S. at 553; *Rosenberger*, 515 U.S. at 833; *Finley*, 524 U.S. at 598; *see also supra* pp. 15–26. Moreover, the Court has also shown that VDARE's conclusory and speculative allegations are insufficient to show a causal connection between Defendants' Statement and Cheyenne Resort's cancellation of the Conference. *See supra* pp. 22–26. These conclusions dispel VDARE's ability to plead that Defendants' Statement amounted to an adverse action and "caused [VDARE] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity[.]" *Leverington*, 643 F.3d at 729.

As a result, VDARE's deficient allegations are insufficient to establish the second element of its retaliation claim. Therefore, VDARE's retaliation claim is also dismissed for failure to state a claim.

### 3.    **Equal Protection Claim**

The Court notes that neither party objected to the Magistrate Judge's recommendation to dismiss Plaintiff's Equal Protection Clause ("EPC") claim. When neither party objects to a Magistrate Judge's Recommendation, the Court "may review a magistrate [judge's] report under any standard it deems appropriate." *Summers*, 927 F.2d at 1167. Although VDARE did not allege an EPC claim under a separate heading, Magistrate Judge Tafoya and Defendants construed Paragraph 19 of the Amended Complaint as a possible attempt by VDARE to allege an EPC claim. (Doc. # 35 at 8–9.) Paragraph 19 alleges:

> The actions of Defendants as described herein, while acting under color of state law, intentionally deprived Plaintiff of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the rights to freedom of speech and freedom of association as guaranteed by the First Amendment to the Constitution of the United States of America, **equal protection of the laws** as guaranteed by the Fourteenth Amendment of the Constitution of the United States of America, and 42 U.S.C. § 1983, in that Defendants unlawfully threatened to withhold city services based upon Plaintiff's speech and associations.

(Doc. # 13 at 7, ¶ 19 (emphasis added).) Because the Amended Complaint did not contain "any facts to support [VDARE's] contention that it was denied equal protection rights" or the elements of an EPC claim under Tenth Circuit law, Magistrate Judge Tafoya recommended that this claim be dismissed. VDARE neither objected to nor responded to this portion of the Recommendation.

The Court has reviewed all the relevant pleadings and applicable legal authority concerning the Recommendation on VDARE's first claim to the extent it attempts to plead an EPC claim. Based on this review, the Court concludes that Magistrate Judge

Tafoya's analysis and recommendation is correct and that "there is no clear error on the face of the record." Fed. R. Civ. P. 72(a). The Court therefore adopts the Recommendation with respect to VDARE's EPC claim.

### 4. Tortious Interference Claim

Finally, Magistrate Judge Tafoya recommends that this Court decline to exercise supplemental jurisdiction over VDARE's state common law claim for tortious interference. (Doc. # 35 at 11–13.) Because VDARE's only objection to this portion of the recommendation is based on VDARE's assertion that it pleaded plausible federal claims (Doc. # 36 at 16), the Court agrees with the Magistrate Judge.

28 U.S.C. § 1367(c)(3) provides that a district court has the discretion to decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." *See also Smith v. City of Enid ex rel. Enid City* Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). When a state law claim is no longer supplemental to any federal question claim, "the most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice[.]" *Ball v.* Renner, 54 F.3d 664, 669 (10th Cir. 1995); *see also Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (reversing district court's grant of summary judgment on state law tort claim and remanding with instructions to dismiss it without prejudice because Tenth Circuit observed that state law tort claim was "best left for a state court's determination"). This preferred practice derives from the "seminal

teaching of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), reconfirmed in

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) and repeated in a host of

cases such as *Sawyer v. County of Creek*, 908 F.2d 663 (10th Cir. 1990)[, *overruled on*

*other grounds in Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909 (10th Cir. 2012)]." *Id.*

The Tenth Circuit has recognized that there are compelling reasons "for a district court's

deferral to a state court rather than retaining and disposing of state law claims itself[,]"

including factors such as "economy, fairness, convenience and comity." *Id.* "Notions of

comity and federalism demand that a state court try its own lawsuits, absent compelling

reasons to the contrary." *Id.* (quoting *Thatcher Enters. v. Cache Cty. Corp.*, 902 F.2d

1472, 1478 (10th Cir. 1990)).

After dismissing VDARE's First Amendment and retaliation claims, there are no

remaining federal question claims in this case, and VDARE has never sought to

establish diversity of citizenship jurisdiction with respect to its state-law claim. As such,

"[u]nder those circumstances, 28 U.S.C. § 1367(c)(3) expressly permits a district court

to decline to exercise supplemental jurisdiction over any remaining state-law claims[.]"

*Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008). Thus, this Court follows the

Tenth Circuit's preference and finds that notions of comity and federalism justify "state

rather than federal court resolution of the" state law claim for tortious interference.[5] *Ball*,

---

[5] Moreover, Colorado law recognizes "if a plaintiff asserts all of his or her claims, including state
law claims, in federal court, and the federal court declines to exercise supplemental jurisdiction
[over the state claims], the plaintiff may refile those claims in state court." *Brooks*, 614 F.3d at
1230 (quoting *Dalal v. Allliant Techsystems, Inc.*, 934 P.2d 830, 834 (Colo. App. 1996)
(explaining that 28 U.S.C. § 1367(d) states the period of limitation for a state claim is tolled while
claim is pending in federal court and for thirty days after it is dismissed unless state law provides
for a longer tolling period)).

54 F.3d at 669. Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over VDARE's remaining state law tortious interference claim and dismisses it without prejudice.[6]

## IV.        CONCLUSION

Based on the foregoing reasons, the Court ORDERS as follows:

1.        VDARE's Objection (Doc. # 36) to the Recommendation is OVERRULED;

2.        The Recommendation (Doc. # 35) of Magistrate Judge Kathleen M. Tafoya is ADOPTED as an ORDER of this Court;

3.        Defendants Mayor John Suthers and the City of Colorado Springs' Motion to Dismiss First Amended Complaint (Doc. # 24) is GRANTED IN PART;

4.        VDARE's First Amendment, Retaliation, and Equal Protection Clause Claims are DISMISSED WITH PREJUDICE;[7]

5.        VDARE's tortious interference claim is DISMISSED WITHOUT PREJUDICE;

---

[6] VDARE is welcome to pursue its claim in a Colorado state court where the state court has an interest in trying its own lawsuit. *Brooks*, 614 F.3d at 1230.

[7] The Court notes that VDARE has already amended its complaint once, and as such, it would be futile to allow further amendment to correct the multitude of legal and factual deficiencies of VDARE's Amended Complaint. *See Guy v. Lampert*, 748 F. App'x 178, 181 (10th Cir. 2018) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010)); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997); *see also Weise v. Casper*, 507 F.3d 1260, 1265 (10th Cir. 2007) (recognizing that "a district court cannot avoid ruling on the merits of a qualified immunity defense when it can resolve the purely legal question of whether a defendant's conduct, as alleged by plaintiff, violates clearly established law"); *Lybrook v. Members of the Farmington Mun. Schs. Bd. of Educ.*, 232 F.3d 1334, 1341 (10th Cir. 2000) (affirming district court order granting motion to dismiss with prejudice on qualified immunity grounds). Thus, the dismissal of VDARE's First Amendment, retaliation, and Equal Protection Clause claims is with prejudice.

6.      VDARE's Unopposed Motion for Enlargement of Time to File Reply in Support of Plaintiff's Objection to Magistrate Recommendations (Doc. # 40) is DENIED AS MOOT; and

7.      VDARE's *Post Factum* Motion to Exceed Page Limitation (Doc. # 41) is DENIED AS MOOT.

        DATED:  March 27, 2020

                                        BY THE COURT:

                                        _____
                                        CHRISTINE M. ARGUELLO
                                        United States District Judge